2011 Ark. App. 745

**Amber NESPOR, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 11–749.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Deborah Ruth Sallings, Little Rock, for appellant.

Tabitha Baertels McNulty, Little Rock, Keith L. Chrestman, Jonesboro, for appellee.

LARRY D. VAUGHT, Chief Judge.

On May 16, 2011, the Baxter County Circuit Court entered a judgment terminating the parental rights of Amber Hancock Nespor and Justin Studdard to their child L.N., born January 1, 2010. Nespor

challenges the judgment, arguing that it does not state grounds or any other statutory basis to uphold the termination.[1] We affirm.

In January 2010, the Arkansas Department of Human Services (DHS) sought to take L.N. into emergency custody after it learned that Nespor tested positive for THC, which was of significant concern because Nespor was breast feeding L.N. There was also a pending protective-services case on Nespor, which had been opened in 2008, involving two of Nespor's other children, who were in foster care. The trial court granted DHS emergency custody of L.N. on January 14, 2010, and in an order dated January 27, 2010, the court found probable cause to believe that L.N. was dependent-neglected. At a hearing held February 1, 2010, the trial court adjudicated L.N. dependent-neglected. Nespor did not attend this hearing because she and Studdard had fled to avoid pending charges filed against them in Baxter County.

There was a review hearing on May 27, 2010; however, Nespor did not attend because she had been incarcerated in the Baxter County jail, awaiting transfer to the Arkansas Department of Correction to serve a two-year sentence. Nevertheless, the trial court kept reunification as the goal of the case, found that DHS had made reasonable efforts to assist Nespor in her reunification, and ordered Nespor to comply with the case plan.

On September 9, 2010, DHS filed a petition for termination of Nespor's parental rights, citing Arkansas Code Annotated section 9–27–341(b)(3)(B)(vii)(a) (Repl. 2009), and alleging that other factors or issues arose subsequent to the filing of the dependency-neglect petition that demonstrated that the return of L.N. to Nespor was contrary to the child's health, safety, or welfare, and that despite the offer of appropriate family services, Nespor had manifested the incapacity or indifference to remedy those subsequent factors or issues or rehabilitate the circumstances, which prevented the return of the child to the family home. In the petition, DHS also asserted that Nespor manifested indifference by failing to comply with the case plan and court orders, alleging thirteen specific failures.

At the termination hearing, Nespor testified that from January 21, 2010, until March 3, 2010, she and Studdard were "on the run" after they picked up new criminal charges and a warrant was issued for their arrest. They traveled to Heber Springs, then to Kansas, and finally to Oklahoma, where they were eventually apprehended by law-enforcement officials. She said that from March 3, 2010, until January 4, 2011, she was incarcerated at various facilities and that she was on parole until March 2012. At the time of the termination hearing, she had a failure-to-appear charge pending and a $1202 fine due to the Stone County Police Department.

Nespor told the trial court that she was no longer in a relationship with Studdard, although she was living with his family members. She claimed that she complied with the case plan and that she sought counseling in prison, although she failed to present any documentation or witnesses to corroborate her testimony. She also testified that she attended all visitation with L.N., stating that her transportation to visitation was often provided by DHS. She denied being referred by DHS for any parenting evaluation or classes, a psychological evaluation or counseling, anger-management counseling, substance-abuse counseling, or inpatient treatment.

1. The termination of Studdard's parental rights is not the subject of this appeal.

When pressed, Nespor admitted that since being released from prison, she had not secured employment, completed parenting classes, completed anger-management classes, completed a drug assessment or attended AA/NA meetings, submitted her budget to DHS, or paid child support for L.N. She also conceded that she did not have her own home, a driver's license, or transportation. Her sole source of income was monthly disability benefits of $700. Nespor testified that she loved L.N. and wanted custody of her child, although Nespor admitted that she was not presently prepared to have custody of L.N. and that L.N. was better off with her foster family. Nespor requested that the trial court grant her additional time to prove that she could be a good and stable mother to L.N.

L.N.'s first foster parent, Debbie Thatcher, testified that she exercised custody of L.N.—since she was fourteen days old—from January 2010 to May 2010, and that she continued to provide services to L.N., on behalf of DHS, after L.N. left her custody in May 2010. Thatcher said that from January 23, 2010, until March 2010, L.N. did not see Nespor. Once Nespor was incarcerated, Thatcher said that she transported L.N. to four visits with Nespor at the Baxter County jail and multiple visits to the prison on Sundays from July 2010 to January 2011. While Nespor would hold, feed, and play with L.N. on some visits, Thatcher testified that there was no bond or attachment between them. Thatcher added that L.N. was in the custody of another foster family, who wanted to adopt L.N. This family had already adopted two of Nespor's other children.

Pat Blades, a Family Service Worker Supervisor for Baxter County, testified that Nespor showed lack of improvement in her case by failing to secure housing, maintain contact with DHS, maintain a source of income, maintain reliable transportation, maintain counseling, and complete the drug assessment. It was Blades's concern that Nespor's consistent instability and failure to follow through with the case plan—with L.N. and all of her other children—was a potential harm to L.N. Blades added that L.N. had been in foster care in excess of twelve months, that there was no bond between L.N. and Nespor, and that it was in the best interest of L.N. that she be adopted and Nespor's parental rights be terminated.[2]

At the conclusion of the hearing, the trial court, in its oral findings, terminated Nespor's parental rights based on section 9–27–341(b)(3)(B)(vii)(a), the subsequent-issues ground. The trial court stated that it could not "shake from its head" that after L.N.—who was only fourteen days old—was removed from Nespor's custody, Nespor abandoned the child and did not voluntarily return. The trial court found that Nespor failed to comply with the case plan (specifically finding that DHS had proved nine of the thirteen allegations listed in the petition on this point), had no history of employment, no stable housing, no driver's license, no transportation, no insurance, and no ability to obtain these things based upon her budget. The trial court noted that L.N. only knew foster care and did not know Nespor. The court

---

**2.** Following the presentation of its case, DHS moved to amend the petition to terminate to include the additional ground found in Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(a) (Repl.2009) (providing that the juvenile had been adjudicated by the court to be dependent-neglected and had continued out of the home for twelve months and, despite a meaningful effort by DHS to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent). The trial court granted the motion and amended the petition.

also found that L.N. was adoptable and that DHS had provided appropriate services under the circumstances. Finally, the trial court found that an additional two or three months would not serve any beneficial purpose in this case.

A written judgment was later entered by the trial court on May 16, 2011, terminating Nespor's parental rights. Nespor timely appealed from the judgment. She does not challenge the sufficiency of the evidence supporting the termination decision. Instead, she argues that the trial court's judgment is fatally flawed because it fails to state grounds or any other statutory basis to uphold the termination.

 When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Porter v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 680, at 9, 378 S.W.3d 246, 251. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Porter*, 2010 Ark. App. 680, at 9–10, 378 S.W.3d at 251–52. Parental rights, however, will not be enforced to the detriment |₆or destruction of the health and well being of the child. *Id.* at 10, 378 S.W.3d at 252. We review the termination of parental rights de novo. *Id.*, 378 S.W.3d at 251. The facts warranting termination of parental rights must be proved by clear and convincing evidence, and in reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Id.*, 378 S.W.3d at 252. Clear and convincing evidence is that degree of proof which will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.*, 378 S.W.3d at 252. In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility

of witnesses. *Id.*, 378 S.W.3d at 252. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Id.*, 378 S.W.3d at 252.

 An order forever terminating parental rights must be based on clear and convincing evidence that the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by continuing contact with the parent. *Id.* at 10–11, 378 S.W.3d at 251–52 (citing Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2009)). In addition to determining the best interests of the child, the court must find clear and convincing evidence that circumstances exist that, according to the statute, justify terminating parental rights. *Id.* at 11, 378 S.W.3d at 252 (citing Ark.Code Ann. § 9–27–341(b)(3)(B)).

 Nespor argues that reversal is warranted because the trial court's judgment is defective—it fails to cite the statutory grounds or state the statutory language upon which the |₇termination decision was based. She claims that the written judgment "simply lists a litany of shortcomings on the part of [Nespor], none of which are statutory grounds for [termination]." We agree with Nespor that the trial court's written judgment failed to specifically cite the statutory grounds and state the exact language from the statute upon which it based its termination decision. While it is the better practice to include such information in a termination decision, and the judgment was not as artfully drawn as it could have been, we hold that it does not require reversal.

The judgment in question references DHS's petition for termination, which alleged the subsequent-issues ground found

in section 9–27–341(b)(3)(B)(vii)(a). This is the ground discussed throughout the hearing, and it was the ground expressly stated by the trial court in its oral findings to be the basis of its termination decision. Further, there are multiple findings included in the judgment that support termination based on this ground.

█ The trial court found by clear and convincing evidence that Nespor had her parental rights terminated to four of her other children; she had not complied with the case plan; after L.N. had been taken into DHS custody, Nespor abandoned L.N. and did not come back until she was involuntarily returned by law-enforcement authorities and she had been incarcerated for ten months; she had insufficient income to support L.N.; she failed to submit a budget or sign releases as ordered; she failed to show up for appointments; there had been referrals made by DHS for parenting evaluations and counseling, for anger-management classes, and substance-abuse treatment, but that Nespor did not participate in those services as ordered; and her circumstances were the same as when the case started—she had no job, no home, no transportation, no driver's license, and her substance-abuse and criminal issues continued. The trial court further found that there was no bond between Nespor and L.N., that it was in the best interest of L.N. to be adopted, and that L.N. was adoptable.

█ Therefore, employing our de novo review, we hold that the trial court's failure to cite the applicable statutory section or language from the statute upon which it relied to terminate Nespor's parental rights does not require reversal of the trial court's judgment. In *Porter*, also a termination-of-parental-rights case, we held that although the trial court did not quote the statutory citation or language in its exact form in the written order, the court's meaning could not be more clear, and its intent, based on its oral remarks and written order, was to rely on the subsequent-issues ground to terminate the appellant's parental rights. 2010 Ark. App. 680, at 12, 378 S.W.3d at 253. Likewise, in the instant case, the trial court's intent could not be more clear. The written judgment referenced DHS's petition, which sought termination based on the subsequent-issues ground found in section 9–27–341(b)(3)(B)(vii)(a). There was an abundance of evidence presented at the termination hearing supporting that ground, and the trial court's judgment included multiple findings (as set forth above) supporting that ground. Finally, the trial court's oral findings, which expressly cited section 9–27–341(b)(3)(B)(vii)(a) and found among other things that Nespor had abandoned L.N. and had been incarcerated after she had been placed in DHS custody, establish the trial court's intent.[3] Accordingly, we hold that the trial court intended, in its written judgment, to rely on the subsequent-issues ground to support its termination decision, and we affirm.

Affirmed.

PITTMAN and GRUBER, JJ., agree.

---

3. Nespor appears to concede that the trial court stated grounds in its oral findings; however, she argues that whatever oral findings were made at the conclusion of the trial, when those findings were not made a part of the written order, did not become part of the final order. Relying on our holding in *Porter*, we hold that in this case, consideration of the trial court's oral findings is appropriate in determining the intent behind the trial court's written judgment.